IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DOREEN M. VALENTINE, | CASE NO. 4:09 CV 1908 |
| Plaintiff, | |
| | JUDGE ADAMS |
| v. | |
| | MAGISTRATE JUDGE McHARGH |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Doreen M. Valentine's application for Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the court recommends that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION and PROCEDURAL HISTORY

On October 3, 2005, Plaintiff filed an application for SSI, alleging a disability onset date of September 29, 2005, due to arthritis, high blood pressure, cholesterol, asthma, and vision problems (Tr. 52-53, 77). However, Plaintiff appears to have abandoned her claims of disability on account of these conditions; now, her claim is that she is disabled as a result of the problems she has with her feet. Plaintiff's Brief. Plaintiff's applications for benefits were denied initially

and upon reconsideration. Plaintiff requested a hearing and subsequently appeared and testified before Administrative Law Judge James J. Pileggi (the "ALJ") (Tr. 13-21). The ALJ determined at Step Five of the five-step sequential evaluation[1] that Plaintiff had the residual functional capacity ("RFC") to perform a significant number of sedentary level jobs in the national economy and, therefore, was not disabled (Tr. 13-21). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. On appeal, Plaintiff claims that the ALJ erred by failing to accommodate the limitations she has as a result of her foot condition – specifically, Plaintiff's alleged need to elevate her legs.

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. § 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – he is not disabled.

(2) If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

(3) If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

(5) Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Born on September 13, 1960, Plaintiff was 45 years old on her alleged disability onset date, 48 years old at the time of the hearing and the ALJ's determination, and was at all times a "younger individual" for purposes of the Social Security regulations (Tr. 291).  *See* [20 C.F.R. § 416.963](#).  Plaintiff graduated from high school (Tr. 291).  She has past relevant work as a cashier and stocker (light, unskilled), fast-food worker (light, unskilled), laundry worker (light, unskilled), dishwasher (medium, unskilled), prep cook (light, unskilled), hostess (light, unskilled), restaurant stocker (light, unskilled), and a plastics factory tender (medium, unskilled) (Tr. 292-93, 310-11).

## II.  DISABILITY STANDARD

A claimant is entitled to receive Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* [42 U.S.C. § 1381](#).  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* [20. C.F.R. § 416.905](#).

## III.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See [Cunningham v. Apfel](#)*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *[Garner v. Heckler](#)*, 745 F.2d 383, 387 (6th Cir. 1984); *[Richardson v. Perales](#)*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence

but less than a preponderance of the evidence.  See Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  Id.  Indeed, the Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  See Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986); Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility.  See Garner, 745 F.2d at 387.  However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  See Walker v. Secretary of Health & Human Servs., 884 F.2d 241, 245 (6th Cir. 1989).

### IV.  ANALYSIS

**Whether the ALJ Erred by Failing to Account for the Limitations Associated With Plaintiff's Foot Condition**

Plaintiff raises a single issue on appeal: that the ALJ erred by relying on the VE's response to a hypothetical question that did not accommodate Plaintiff's alleged need to elevate her feet.[2]  Plaintiff does not challenge any other aspects of the ALJ's RFC finding or any other portions of the ALJ's written decision.

---

[2]Plaintiff characterizes her argument as two-fold: (1) that the ALJ ignored counsel's line of questioning to the VE, and (2) that the ALJ failed to accommodate Plaintiff's need to elevate her legs.  However, since the line of the questioning to which Plaintiff alludes is concerned exclusively with Plaintiff's need to elevate her legs, these two issues are one and the same.

Once it is determined a claimant does not have the RFC to perform his or her past relevant work, the burden shifts to the Commissioner to show that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *Anthony v. Astrue*, 266 Fed. Appx. 451, 460 (6th Cir. 2008) (citing *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)). "To meet this burden, there must be a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The testimony of a vocational expert in response to a hypothetical question may serve as substantial evidence of a claimant's vocational qualifications to perform certain jobs, but only if the hypothetical accurately portrays the claimant's physical and mental state. *See id.*; *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). Should the hypothetical fail to accurately describe a claimant's physical and mental impairments, the defect is fatal to both the vocational expert's testimony and the ALJ's reliance upon that testimony. *See id.* However, it is well-settled that an ALJ is only required to incorporate those limitations which he has deemed credible in formulating the hypothetical. *Gant v. Comm'r of Soc. Sec.*, 2010 WL 1378427, at *3 (6th Cir. Apr. 7, 2010) (citing *Stanley v. Sec. of Health and Hum. Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)).

At the hearing, Plaintiff testified that she has pain in both feet and that she takes over-the-counter Ibuprofen for pain relief, which helps some (Tr. 294-95). She further testified that she has vascular disease in her feet, which caused her feet to be cold, and that she takes Neurontin in the mornings and evenings for her foot condition (Tr. 303). She further testified that her foot condition causes her to experience pain like "needles" and "jabbing," and that the amount of

pain varies depending on how busy she is (Tr. 304). When she is really busy, her feet hurt worse; when she is relaxing and not busy, her feet do not hurt as badly (Id.). Plaintiff also testified that she has to elevate her legs, but that the frequency of how often she needed to do so varies (Id.). On a good day, she needs to elevate her legs once for about 15-20 minutes (Tr. 305). However, on a bad day, she needs to elevate her legs two to three times per day for about an hour each time (Id.).

Later in the hearing, Plaintiff's counsel asked the VE to consider hypothetical individual number one[3] with the additional limitation that the individual would need to elevate her feet to waist level while on the job anywhere from one to three times per day, and for fifteen minutes to half an hour at a time (Tr. 312). The VE responded that such an individual would not be able to perform work existing in significant numbers in the national economy as "[t]hat level of accommodation would exceed what most employers would provide" (Tr. 313). The ALJ then asked whether there were any prohibition against a person elevating her legs while taking the normally scheduled breaks and lunch period, and the VE testified that there was no such prohibition (Tr. 313). The VE further testified that generally there is one fifteen minute break during the first half of the shift, another fifteen minute break during the second half of the shift, and a thirty minute – or possibly longer – lunch break during the middle of the shift (Tr. 313-14).

Notably, Plaintiff fails to refer to any medical evidence in the record to support her claim that she needs to elevate her feet up to three times during the work day for up to a half hour to an

---

[3]The individual in hypothetical number one would have Plaintiff's age, education and work experience as well as the following limitations: capable of sedentary work but unable to be exposed to pulmonary irritants such as dust, smoke and fumes; unable to operate foot controls; unable to crawl, kneel climb or balance; and unable to reach or lift routinely over the head with the left shoulder and arm.

hour at a time. Although Plaintiff does not mention it, the court notes that Dr. Williams' March 2009 responses to a letter from Plaintiff's representative may constitute some opinion evidence regarding Plaintiff's alleged need to elevate her legs (Tr. 272). The letter inquired of Dr. Williams whether Plaintiff needed to elevate her legs, at what level, how many times per day she needed to do so, and for how long each time (Id.). In response to the first two questions, Dr. Williams indicated that Plaintiff would need to elevate her legs to waist level. In response to question regarding number of times per day, Dr. Williams wrote, "when not active, leg should be elevated while at rest" (Id.). In response to the question regarding how long Plaintiff should elevate her leg each time, Dr. Williams wrote, "at all times when at rest" (Id.).

As the ALJ indicated in the written decision, Dr. Williams' responses are not particularly specific regarding how many times per day Plaintiff should elevate her legs, apart from their indication that she should do so when not active and/or at all times while at rest (Tr. 19). Notably, the responses do not indicate that Plaintiff should be inactive or at rest for any prescribed periods of time during the day. Thus, the extent to which Dr. Williams' letter addresses the frequency and amount that Plaintiff should elevate her feet and legs each day is somewhat unclear. As Defendant notes, the responses also do not reflect the basis for Dr. Williams' statements, and neither Dr. Williams' treatment notes nor those of any of Plaintiff's other physicians make any notation that Plaintiff should elevate her legs. *See* 20 C.F.R. § 416.927(d)(3) (providing that the better the explanation a medical source provides for his opinion, the more weight the ALJ will give to that opinion); *Cutlip v. Sec. of Health and Hum. Servs.*, 25 F.3d 284, 287 (6th Cir. 1994) (stating that the opinions of treating physicians "are only accorded great weight wehn they are supported by sufficient clinical findings and are consistent

with the evidence"). Nevertheless, the ALJ indicated that he gave Dr. Williams' responses some weight, presumably to the extent that Plaintiff's alleged need to elevate her legs during the day would not exceed the normal break periods, as identified by the VE.  As noted above, Plaintiff does not mention Dr. Williams' responses in her brief and does not argue that the ALJ erred with respect to his treatment of that evidence or – for that matter – any other medical evidence.  Plaintiff also makes no attempt to explain, by way of the medical evidence, why the normal breaks in an eight hour work day would not accommodate her alleged need to elevate her legs.

Because Plaintiff has not pointed to any medical evidence in the record to support her claim that she needs to elevate her feet up to three times during the work day for up to a half hour to an hour at a time, Plaintiff's argument that the ALJ erred by failing to accommodate this alleged limitation rests on the weight to be given her testimony at the hearing.  However, the ALJ's analysis reflects that he applied the appropriate framework in finding that Plaintiff's complaints of pain were not entirely credible and that her need to elevate her legs is not as severe as alleged.  "[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003).  A reviewing court should "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." Id.  However, an ALJ's credibility determination "must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  See also Rogers v. Comm'r of Soc. Sec., 486 F.3d 234 (6th Cir. 2007).

In evaluating a claimant's credibility with regard to her subjective complaints of pain, an ALJ will follow a two-prong test: "[f]irst, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986). Factors the ALJ should consider in determining a claimant's credibility include: (1) her daily activities, (2) the location, duration, frequency, and intensity of her pain, (3) its precipitating and aggravating factors, 4) the type, dosage, and effectiveness of any medication she takes or has taken, 5) treatment that she has received, other than medication, 6) other measures she uses to relieve pain, and 7) other factors concerning her limitations or restrictions. See Felisky, 35 F.3d at 1038; Social Security Ruling 96-7p.

In this case, the ALJ discussed the record evidence at length, and then stated that although he found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. In making this finding, the ALJ noted that Plaintiff is not taking any narcotic medications for her pain, as well as her statements to her doctors that the medications and injections she receives help control her neuropathy symptoms (Tr. 19). He also noted her statements that her new orthotics are helping her (Id.). The ALJ noted further that Plaintiff's activities – including cooking, shopping, and cleaning – reflect that she is not limited to the degree alleged. In sum, the ALJ's written decision reflects that he considered the entire record and that he cited substantial support for his credibility

determination.  Because the ALJ appropriately rejected Plaintiff's claimed need to elevate her legs to the extent that such a limitation would exceed the normal breaks in an eight hour work day, the ALJ was not required to include such a limitation in his hypothetical to the VE, or to rely on the VE's testimony in response.  Thus, Plaintiff's claim of error is without merit.

## V. CONCLUSION

For the reasons stated above, the Magistrate Judge finds that the decision of the ALJ that Plaintiff is not disabled is supported by substantial evidence.  Accordingly, the Magistrate Judge recommends that the ALJ's decision be AFFIRMED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: June 30, 2010.


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time may constitute a WAIVER of the right to appeal the Magistrate Judge's recommendation.